## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| PETER WILLIAMS, | |
| *Petitioner*, | |
| v. | |
| ENVIRONMENTAL PROTECTION AGENCY, MICHAEL S. REGAN, ADMINISTRATOR, ENVIRON-MENTAL PROTECTION AGENCY, in his official capacity, | No. 23-1340 |
| *Respondents*. | |

## PETITION FOR REVIEW

Pursuant to § 307(b)(1) of the Clean Air Act, 42 U.S.C. §7607(b)(1), § 10(d)-(e) of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 705-706, and the All Writs Act, 28 U.S.C. § 1651(a), petitioner Peter Williams hereby petitions this Court for review of the *Phasedown of Hydrofluorocarbons: Notice of 2024 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020, and Notice of Final Admin-istrative Consequences*, 88 Fed. Reg. 72,060 (Oct. 19, 2023) (Ex. A), by respondents Environmental Protection Agency, its Administrator, Michael S. Regan, and his delegees ("EPA") in EPA's hydrofluorocarbon ("HFC") allocation program.

Venue and jurisdiction are proper in this Court because Section 307(b)(1) directs review in this Court of final agency action that is "nationally applicable" or based on the agency's published determination of "nationwide scope or effect." 42

U.S.C. § 7607(b)(1). EPA made those findings in its notice, 88 Fed. Reg. at 72,066-67 (Ex. A). Although jurisdiction and venue may lie in the district court to challenge EPA's unreasonable delay in acting on the long-pending petitions for administrative reconsideration (Ex. B) of EPA's denial of his application for new-entrant status in HFC allocation program, Order, 2, *RMS of Georgia, LLC v. EPA*, Nos. 22-1025, 22-1313, 22-1314 (July 7, 2023), the district court lacks jurisdiction to issue interim relief that Williams seeks here against EPA's final action under 5 U.S.C. § 705 (*i.e.*, to alter otherwise-final allocations in the HFC program). Whether the Supreme Court reverses this Court's dismissal of Williams' petition for review in No. 22-1314 or Williams must instead proceed to district court to compel EPA to act on his long-pending petition for administrative reconsideration, only this Court has statutory subject-matter jurisdiction under 42 U.S.C. § 7607(b)(1) to issue the interim relief that Williams seeks here under the APA and the All Writs Act. This petition is timely filed within the 60 days allowed by Section 307(b)(1), 42 U.S.C. §7607(b)(1).

Dated: December 18, 2022

Respectfully submitted,

/s/ Lawrence J. Joseph
---
Lawrence J. Joseph

Law Office of Lawrence J. Joseph
1250 Connecticut Ave., NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Petitioner*

# **EXHIBIT A**

eFiling is encouraged. More detailed information relating to filing requirements, interventions, protests, service, and qualifying facilities filings can be found at: *http://www.ferc.gov/docs-filing/efiling/filing-req.pdf.* For other information, call (866) 208–3676 (toll free). For TTY, call (202) 502–8659.

The Commission's Office of Public Participation (OPP) supports meaningful public engagement and participation in Commission proceedings. OPP can help members of the public, including landowners, environmental justice communities, Tribal members and others, access publicly available information and navigate Commission processes. For public inquiries and assistance with making filings such as interventions, comments, or requests for rehearing, the public is encouraged to contact OPP at (202) 502–6595 or *OPP@ferc.gov.*

Dated: October 13, 2023.

**Debbie-Anne A. Reese,**
*Deputy Secretary.*

[FR Doc. 2023–23093 Filed 10–18–23; 8:45 am]

**BILLING CODE 6717–01–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

[EPA–HQ–OAR–2021–0669; FRL–9116–04–OAR]

### Phasedown of Hydrofluorocarbons: Notice of 2024 Allowance Allocations for Production and Consumption of Regulated Substances Under the American Innovation and Manufacturing Act of 2020, and Notice of Final Administrative Consequences

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice.

**SUMMARY:** The Environmental Protection Agency (EPA) has issued calendar year 2024 allowances for the production and consumption of hydrofluorocarbons in accordance with the Agency's regulations. This issuance of allowances is undertaken pursuant to the American Innovation and Manufacturing Act, which directs the Environmental Protection Agency by October 1 of each calendar year to determine the quantity of production and consumption allowances for the following calendar year. In this notice, the Agency is also providing notice of separate Agency actions finalizing administrative consequences for certain entities. These

administrative consequences were applied to withhold, retire, and revoke entities' remaining calendar year 2023 and newly issued calendar year 2024 allowances in accordance with the administrative consequence regulatory provisions.

**FOR FURTHER INFORMATION CONTACT:** Andy Chang, U.S. Environmental Protection Agency, Stratospheric Protection Division, telephone number: 202–564–6658; email address: *chang.andy@epa.gov.* You may also visit EPA's website at *https://www.epa.gov/climate-hfcs-reduction* for further information.

**SUPPLEMENTARY INFORMATION:** Subsection (e)(2)(D)(i) of the American Innovation and Manufacturing Act of 2020 (AIM Act) directs the Environmental Protection Agency (EPA) to determine, by October 1 of each calendar year, the quantity of allowances for the production and consumption of regulated substances that may be used for the following calendar year. EPA has codified the production and consumption baselines and phasedown schedules for regulated substances in 40 CFR 84.7. Under the phasedown schedule, for 2024, total production allowances may not exceed 229,521,263 metric tons of exchange value equivalent (MTEVe) and total consumption allowances may not exceed 181,522,990 MTEVe.

EPA regulations at 40 CFR part 84, subpart A, outline the process by which the Agency determines the number of allowances each entity is allocated. EPA allocated allowances consistent with this process for calendar year 2024, and has posted entity-specific allowance allocations on its website at *https://www.epa.gov/climate-hfcs-reduction.* An allowance allocated under the AIM Act does not constitute a property right and is a limited authorization for the production or consumption of a regulated substance.

Note that while allowances may be transferred or conferred once they are allocated, they can only be expended to cover imports and production in the calendar year for which they are allocated. In other words, calendar year 2024 allowances may only be expended for production and import of bulk HFCs between January 1, 2024, and December 31, 2024.

### Application-Specific Allowances

EPA established the methodology for issuing application-specific allowances

in the 2021 final rule titled *Phasedown of Hydrofluorocarbons: Establishing the Allowance Allocation and Trading Program Under the American Innovation and Manufacturing Act* (86 FR 55116) and codified the methodology for issuing allowance allocations in 40 CFR 84.13. Because application-specific allowances can be expended to either produce or import HFCs, and application-specific allowances must be provided from within the overall annual production and consumption caps, EPA subtracts the amount of application-specific allowances allocated from both the production and consumption general allowance pools. EPA issues application-specific allowances to end users in five applications established by the AIM Act: propellants in metered dose inhalers (MDIs), defense sprays, structural composite preformed polyurethane foam for marine use and trailer use, etching of semiconductor material or wafers and the cleaning of chemical vapor deposition chambers within the semiconductor manufacturing sector, and onboard aerospace fire suppression. Additionally, EPA issues application-specific allowances to the U.S. Department of Defense for mission-critical military end uses.

EPA's 2023 final rule titled *Phasedown of Hydrofluorocarbons: Allowance Allocation Methodology for 2024 and Later Years* (88 FR 46836), updated the methodology for how the Agency would issue production and consumption allowances for 2024 through 2028. These updates are codified in 40 CFR 84.9 (production) and 40 CFR 84.11 (consumption), and EPA is issuing allowances to entities who meet the criteria in the regulations, including those who were previously issued consumption allowances as new market entrants pursuant to 40 CFR 84.15.

EPA's final calculations for allocation of allowances for each entity on September 29, 2023, follows below. EPA followed the methodology from the applicable regulations in determining allocations, *i.e.,* 40 CFR 84.13 for application-specific allowances, 40 CFR 84.9 for production allowances, and 40 CFR 84.11 for consumption allowances.

Applying the methodology codified in 40 CFR 84.13, EPA allocated the number of application-specific allowances shown in Table 1.

TABLE 1—NUMBER OF CALENDAR YEAR 2024 APPLICATION-SPECIFIC ALLOWANCES ALLOCATED PER ENTITY

| Entity | Application | Application-specific allowances (MTEVe) allocated |
|---|---|---|
| Analog devices | Semiconductors | 18,130.0 |
| Applied Materials | Semiconductors | 10,666.7 |
| Armstrong Pharmaceuticals | Propellants in MDIs | 230,001.2 |
| ASML US | Semiconductors | 1,033.8 |
| AstraZeneca Pharmaceuticals | Propellants in MDIs | 3,848.9 |
| Aurobindo Pharma USA | Propellants in MDIs | 28,316.9 |
| Broadcom | Semiconductors | 213.1 |
| Compsys | Structural Composite Preformed Polyurethane Foam | 19,928.6 |
| Defense Technology | Defense Sprays | 1,537.4 |
| Diodes Incorporated | Semiconductors | 2,584.5 |
| General Electric | Semiconductors | 73.9 |
| GlaxoSmithKline | Propellants in MDIs | 523,906.9 |
| GlobalFoundries | Semiconductors | 152,916.2 |
| Guardian Protective Devices | Defense Sprays | 7,467.0 |
| Hitachi High-Tech America | Semiconductors | 537.9 |
| IBM Corporation | Semiconductors | 369.4 |
| Intel Corporation | Semiconductors | 597,502.0 |
| Invagen Pharmaceuticals | Propellants in MDIs | 156,427.2 |
| Jireh Semiconductor | Semiconductors | 1,600.2 |
| Keysight Technologies | Semiconductors | 537.7 |
| Kindeva Drug Delivery | Propellants in MDIs | 335,693.4 |
| LA Semiconductor | Semiconductors | 2,584.5 |
| Lam Research Corp | Semiconductors | 182,210.4 |
| Lupin | Propellants in MDIs | 21,415.7 |
| Medtronic Tempe Campus | Semiconductors | 457.1 |
| Microchip Technology | Semiconductors | 43,757.2 |
| Micron Technology | Semiconductors | 40,557.8 |
| Newport Fab DBA TowerJazz | Semiconductors | 6,414.4 |
| Northrop Grumman Corporation | Semiconductors | 2,116.0 |
| NXP Semiconductor | Semiconductors | 72,169.2 |
| Odin Pharmaceuticals | Propellants in MDIs | 1,075.7 |
| Polar Semiconductor | Semiconductors | 11,718.5 |
| Proteng Distribution | Onboard Aerospace Fire Suppression | 6,723.4 |
| Qorvo Texas | Semiconductors | 1,065.3 |
| Raytheon Technologies | Onboard Aerospace Fire Suppression | 1,535.4 |
| Renesas Electronics America | Semiconductors | 1,065.3 |
| Samsung Austin Semiconductor | Semiconductors | 334,439.8 |
| Security Equipment Corporation | Defense Sprays | 53,652.3 |
| Semiconductor Components Industries DBA ON Semiconductor. | Semiconductors | 19,001.0 |
| SkyWater Technology | Semiconductors | 18,718.8 |
| Skyworks Solutions | Semiconductors | 536.8 |
| Taiwan Semiconductor Manufacturing Company Arizona Corporation (TSMC Arizona Corporation). | Semiconductors | 34,250.1 |
| Texas Instruments | Semiconductors | 193,836.7 |
| The Research Foundation for The State University of New York OBO SUNY Polytechnic Institute. | Semiconductors | 1,034.4 |
| Tokyo Electron America | Semiconductors | 558.8 |
| Tower Semiconductor San Antonio | Semiconductors | 8,502.2 |
| UDAP Industries | Defense Sprays | 37,629.1 |
| Wabash National Corporation | Structural Composite Preformed Polyurethane Foam | 66,340.0 |
| WaferTech | Semiconductors | 18,103.3 |
| Wolfspeed | Semiconductors | 48,648.1 |
| X–FAB Texas | Semiconductors | 2,432.6 |
| Department of Defense | Mission-critical Military End Uses | 2,511,081.5 |
| Total Issued | All | 5,836,924.3 |

EPA has denied requests for application-specific allowances from Apple Inc. and Zarc International, Inc. because they are ineligible under 40 CFR 84.13. The requests were ineligible for at least one of the following reasons:

(1) Did not report purchases of regulated substances in the past three years; or

(2) Failed to submit a request by the deadline.

**General Pool Allowances for Production**

Applying the methodology codified in 40 CFR 84.9, EPA allocated the number of production allowances shown in Table 2.

TABLE 2—NUMBER OF CALENDAR YEAR 2024 PRODUCTION ALLOWANCES ALLOCATED PER ENTITY

| Entity | Production allowances allocated (MTEVe) |
|---|---|
| Application-specific allowances | [a] 5,836,924.3 |
| Arkema | 26,990,669.0 |
| Chemours | 50,038,369.2 |
| Honeywell International | 113,275,864.9 |
| Iofina Chemical | 1,160.9 |
| Mexichem Fluor DBA Koura | 33,378,274.7 |
| Total Issued | 229,521,263.0 |

[a] See Table 1; this value corresponds to the total number of application-specific allowances allocated.

**General Pool Allowances for Consumption**

Applying the methodology codified in 40 CFR 84.11, EPA allocated the number of consumption allowances shown in Table 3.

TABLE 3—NUMBER OF CALENDAR YEAR 2024 CONSUMPTION ALLOWANCES ALLOCATED PER ENTITY

| Entity | Consumption allowances allocated (MTEVe) |
|---|---|
| Application-specific allowances | [a] 5,836,924.3 |
| A.C.S. Reclamation & Recovery (Absolute Chiller Services) | 128,987.8 |
| Ability Refrigerants | 128,987.8 |
| ACT Commodities | 50.4 |
| Advance Auto Parts | 461,215.3 |
| Advanced Specialty Gases | 184,102.8 |
| AFK & Co | 124,689.8 |
| AFS Cooling | 128,987.8 |
| A-Gas | 2,199,784.7 |
| Air Liquide USA | 321,682.9 |
| AllCool Refrigerant Reclaim | 128,987.8 |
| American Air Components | 128,987.8 |
| Arkema | 20,051,844.9 |
| Artsen | 663,053.3 |
| Automart Distributors DBA Refrigerant Plus | 128,987.8 |
| AutoZone Parts | 1,304,000.7 |
| AW Product Sales & Marketing | 77,991.8 |
| Bluon | 21,590.6 |
| CC Packaging | 125,118.2 |
| Chemours | 22,115,332.4 |
| Chemp Technology | 128,987.8 |
| ChemPenn | 14,336.2 |
| ComStar International | 232,510.8 |
| Creative Solution | 128,987.8 |
| Cross World Group | 128,987.8 |
| Daikin America | 2,013,820.3 |
| EDX Industry | 370,884.7 |
| Electronic Fluorocarbons | 67,293.9 |
| Fireside Holdings DBA American Refrigerants | 128,973.9 |
| First Continental International | 496,747.8 |
| FluoroFusion Specialty Chemicals | 1,647,053.3 |
| Freskoa USA | 128,987.8 |
| GlaxoSmithKline | 347,339.2 |
| Golden Refrigerant | 128,987.8 |
| Harp USA | 493,996.4 |
| Honeywell International | 53,136,510.9 |
| Hudson Technologies | 1,928,081.5 |
| Hungry Bear | 128,987.8 |
| ICool USA | 2,198,406.6 |
| IGas Holdings | 16,846,810.7 |
| Iofina Chemical | 817.1 |
| Kidde-Fenwal | 128,987.8 |
| Lenz Sales & Distribution | 716,447.4 |
| Lina Trade | 128,987.8 |
| Linde | 343,607.9 |
| Matheson Tri-Gas | 22,015.7 |

TABLE 3—NUMBER OF CALENDAR YEAR 2024 CONSUMPTION ALLOWANCES ALLOCATED PER ENTITY—Continued

| Entity | Consumption allowances allocated (MTEVe) |
|---|---|
| MEK Chemical Corporation | 53,572.5 |
| Meraki Group | 128,987.8 |
| Metalcraft | 103,835.2 |
| Mexichem Fluor DBA Koura | 16,441,211.7 |
| Mondy Global | 205,649.7 |
| National Refrigerants | 12,780,590.6 |
| Nature Gas Import and Export | 528,873.0 |
| North American Refrigerants | 128,987.8 |
| O23 Energy Plus | 128,987.8 |
| Perfect Score Too DBA Perfect Cycle | 24,427.9 |
| Reclamation Technologies | 256,685.4 |
| Resonac America (formerly Showa Chemicals of America) | 42,851.2 |
| RGAS (formerly listed as Combs Gas) | 2,951,990.2 |
| RMS of Georgia | 1,063,455.0 |
| Sciarra Laboratories | 5,604.6 |
| SDS Refrigerant Services | 128,987.8 |
| Solvay Fluorides | 711,375.5 |
| Summit Refrigerants | 128,987.8 |
| SynAgile Corporation | 725.8 |
| Technical Chemical | 2,203,622.1 |
| TradeQuim | 128,987.8 |
| Transocean Offshore Deepwater Drilling | 11.0 |
| Tulstar Products | 473,694.4 |
| Tyco Fire Products | 128,987.8 |
| USA United Suppliers of America DBA USA Refrigerants | 273,401.8 |
| USSC Acquisition Corp | 84,777.8 |
| Walmart | 1,471,574.6 |
| Waysmos USA | 361,839.8 |
| Wego Chemical Group | 36,492.6 |
| Weitron | 4,089,895.7 |
| Wesco HMB | 128,987.8 |
| Wilhelmsen Ships Service | 26,063.9 |
| Total Issued | 181,522,990.0 |

[a] See Table 1; this value corresponds to the total number of application-specific allowances allocated.

## Administrative Consequences

Separate from the allocation of calendar year 2024 allowances, EPA also took administrative consequences against certain entities. Each administrative consequence is an independent stand-alone action, but for administrative efficiency EPA is providing notice of these independent actions through this notice as well. The requirements surrounding administrative consequences are codified in 40 CFR 84.35. Using this authority, EPA can retire, revoke, or withhold the allocation of allowances, or ban an entity from receiving, transferring, or conferring allowances. A retired allowance is one that must go unused and expire at the end of the year; a revoked allowance is one that EPA takes back from an allowance holder and redistributes to all the other allowance holders; and a withheld allowance is one that is retained by the Agency until an allowance holder that has failed to meet a regulatory requirement comes back into compliance, at which point EPA

allocates it to the allowance holder. A withheld allowance could become a revoked allowance if the allowance holder fails to meet the regulatory requirement at issue within the timeframe specified by EPA.[1] More information on EPA's approach to administrative consequences can be found at 86 FR 55168.

EPA finalized administrative consequences for certain entities that were allocated consumption allowances, listed in Table 3 for calendar year 2024, effective concurrently with the issuance of calendar year 2024 allowances. Specifically, the following entities failed to submit complete HFC reports as required in 40 CFR 84.31 and therefore EPA has withheld a portion of their consumption allowances until the missing reports are filed and verified by EPA: Air Liquide USA; Creative Solution; and Matheson Tri-gas, Inc.

[1] Administrative consequences that the Agency has finalized can be found here: *https://www.epa.gov/climate-hfcs-reduction/administrative-consequences-under-hfc-allocation-rule.*

The following entities imported regulated HFCs without expending the requisite number of consumption allowances at the time of import and therefore EPA has retired and/or revoked consumption allowances commensurate with the quantities of regulated substances imported without allowances: American Air Components; AFK & Co.; Artsen; Bluon, Inc.; Electronic Fluorocarbons; Fluorofusion Specialty Chemicals; and Resonac America, Inc. Lastly, Honeywell International produced and imported regulated substances without expending the requisite number of consumption allowances at the time of production or import.

In some of these cases, EPA finalized administrative consequences that totaled more than was allocated to an entity. For example, American Air Components, Bluon, Inc., and Resonac America, Inc. imported regulated HFCs without the necessary allowances at the time of import in such quantities that exceed their initial allocation of calendar year 2024 allowances. With

respect to one entity, the Agency decided to apply the administrative consequence across multiple years. EPA made this determination given the size of the administrative consequence and

as a result of considerations related to the step reduction in 2024 and implications for the market as a whole regarding access to chemicals that are anticipated to be impacted by EPA HFC

regulations. A summary of these administrative consequences is included in Table 4.

TABLE 4—SUMMARY OF ADMINISTRATIVE CONSEQUENCES EFFECTIVE ON SEPTEMBER 29, 2023, PURSUANT TO 40 CFR 84.35

| Entity | Number of affected allowances (MTEVe) | Applicable year(s) | Administrative consequence action | Reasoning |
|---|---|---|---|---|
| American Air Components | 208,516.5 <br> [a] 104,258.3 | 2024 and future years as needed <br> 2025 and future years as needed | Retire <br> Revoke. | Imported regulated HFCs without expending requisite number of allowances; Will retire and revoke allowances until the full administrative consequence is covered. |
| AFK & Co | 5,701.9 <br> [a] 2,851.0 | 2024 <br> 2024 | Retire <br> Revoke. | Imported regulated HFCs without expending requisite number of allowances. |
| Artsen | 346.7 <br> [a] 173.4 | 2024 <br> 2024 | Retire <br> Revoke. | Imported regulated HFCs without expending requisite number of allowances. |
| Bluon | 575,800.7 <br> [a] 288,855.8 | 2024 and future years as needed <br> As early as 2025 and future years as needed. | Retire <br> Revoke. | Imported regulated HFCs without expending requisite number of allowances; Will retire and revoke allowances until the full administrative consequence is covered. |
| Electronic Fluorocarbons | 64,931.9 <br> [a] 32,466.0 | 2023 <br> 2024 | Retire <br> Revoke. | Imported regulated HFCs without expending requisite number of allowances. |
| Fluorofusion Specialty Chemicals | [a] 5,505.2 | 2024 | Revoke | Imported regulated HFCs without expending requisite number of allowances. |
| Resonac America | 200,070.5 <br> [a] 100,035.3 | 2024 <br> As early as 2025 and future years as needed. | Retire <br> Revoke. | Imported regulated HFCs without expending requisite number of allowances; Will retire and revoke allowances until the full administrative consequence is covered. |
| Honeywell International | [a] 231,334.0 <br> [a] 462,668.1 <br> [a] 925,336.2 <br> [a] 1,388,004.3 <br> [a] 1,619,338.4 | 2024 <br> 2025 <br> 2026 <br> 2027 <br> 2028 | Revoke <br> Revoke. <br> Revoke. <br> Revoke. <br> Revoke. | Produced and imported HFCs without expending requisite number of allowances;[b] Will spread the administrative consequence over five years. |
| Air Liquide USA | 64,336.6 | 2024 | Withhold | Failure to submit complete HFC reports as required in 40 CFR 84.31. |
| Creative Solution | 25,797.6 | 2024 | Withhold | Failure to submit complete HFC reports as required in 40 CFR 84.31. |
| Matheson Tri-Gas | 4,403.1 | 2024 | Withhold | Failure to submit complete HFC reports as required in 40 CFR 84.31. |

[a] As stated in the HFC Allocation Framework Rule (86 FR 55116), EPA explained it would take a 50% premium in first instances of administrative consequences. These values correspond to 50% of the full amount of consumption without requisite allowances at the time of production and/or import.

[b] EPA only finalized administrative consequences for Honeywell International that affect the company's consumption allowances, since the company did not produce regulated substances in a quantity that exceeded the quantity of available production allowances that it had in its possession.

The allowance adjustments by way of withholding, retiring, and/or revoking a portion of entities' calendar year 2024

allowances effective September 29, 2023, are reflected below in Table 5.

TABLE 5—CALENDAR YEAR 2024 ALLOWANCES ADJUSTED THROUGH ADMINISTRATIVE CONSEQUENCES EFFECTIVE SEPTEMBER 29, 2023

| Entity | Number of withheld consumption allowances (MTEVe) | Number of retired consumption allowances (MTEVe) | Number of revoked consumption allowances (MTEVe) |
|---|---|---|---|
| Air Liquide USA | 64,336.6 | | |
| Creative Solution | 25,797.6 | | |
| Matheson Tri-Gas | 4,403.1 | | |
| Electronic Fluorocarbons | | | 32,466.0 |
| Honeywell International | | | 231,334.0 |
| AFK & Co | | 5,701.9 | 2,851.0 |
| American Air Components | | 128,987.8 | |
| Artsen | | 346.7 | 173.4 |
| Bluon | | 21,590.6 | |
| Fluorofusion Specialty Chemicals | | | 5,505.2 |
| Resonac America | | 42,851.2 | |

*Adjustments to Consumption Allowances*

EPA notes that entities in Table 4 who either imported or produced (or both) without expending the requisite number of consumption allowances at the time of production or import were not eligible to receive allowances that were redistributed as a result of allowances revoked for calendar year 2024. Further, an entity is not eligible to receive redistributed allowances if they were subject to administrative consequences that resulted in the revocation of allowances that contributed to the overall total of allowances being redistributed at the time. For example, if EPA revoked 50 MTEVe allowances from company A and 50 MTEVe allowances from company B, effective on the same day, EPA's redistribution of that single pool of 100 MTEVe allowances would go to all general pool allowances holders except company A and company B. This applies regardless of whether the revocation happens in one year or over multiple years. However, entities who only had allowances withheld by the Agency as a result of failure to comply with certain HFC reporting requirements as contained in 40 CFR 84.31 were eligible to receive allowances that were redistributed as a result of allowances revoked for calendar year 2024. For 2024, the total number of revoked and redistributed allowances is 272,329.6 MTEVe, which are being apportioned to eligible consumption allowance holders based on their relative market share, and the total number of retired allowances in 2024 is 199,478.2 MTEVe.

Table 6 reflects consumption allowance totals available to each entity as of September 29, 2023, after taking into account the administrative consequences shown in Table 5.

TABLE 6—TOTAL NUMBER OF CALENDAR YEAR 2024 CONSUMPTION ALLOWANCES AVAILABLE TO EACH ENTITY AS OF SEPTEMBER 29, 2023, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES

| Entity | Available consumption allowances, adjusted for administrative consequences (MTEVe) |
|---|---|
| Application-specific allowances | [a] 5,836,924.3 |
| A.C.S. Reclamation & Recovery (Absolute Chiller Services) | 129,280.9 |
| Ability Refrigerants | 129,280.9 |
| ACT Commodities | 50.5 |
| Advance Auto Parts | 462,263.3 |
| Advanced Specialty Gases | 184,521.1 |
| AFK & Co. | 116,136.9 |
| AFS Cooling | 129,280.9 |
| A-Gas | 2,204,783.0 |
| Air Liquide USA | 258,077.2 |
| AllCool Refrigerant Reclaim | 129,280.9 |
| American Air Components | 0.0 |
| Arkema | 20,097,406.2 |
| Artsen | 662,533.2 |
| Automart Distributors DBA Refrigerant Plus | 129,280.9 |
| AutoZone Parts | 1,306,963.6 |
| AW Product Sales & Marketing | 78,169.0 |
| Bluon | 0.0 |
| CC Packaging | 125,402.5 |
| Chemours | 22,165,582.4 |
| Chemp Technology | 129,280.9 |
| ChemPenn | 14,368.8 |
| ComStar International | 233,039.1 |
| Creative Solution | 103,483.3 |
| Cross World Group | 129,280.9 |
| Daikin America | 2,018,396.1 |
| EDX Industry | 371,727.4 |
| Electronic Fluorocarbons | 34,827.9 |
| Fireside Holdings DBA American Refrigerants | 129,266.9 |
| First Continental International | 497,876.5 |
| FluoroFusion Specialty Chemicals | 1,641,548.1 |
| Freskoa USA | 129,280.9 |
| GlaxoSmithKline | 348,128.4 |
| Golden Refrigerant | 129,280.9 |
| Harp USA | 495,118.8 |
| Honeywell International | 52,905,176.9 |
| Hudson Technologies | 1,932,462.4 |
| Hungry Bear | 129,280.9 |
| ICool USA | 2,203,401.8 |
| IGas Holdings | 16,885,089.6 |
| Iofina Chemical | 819.0 |
| Kidde-Fenwal | 129,280.9 |
| Lenz Sales & Distribution | 718,075.3 |
| Lina Trade | 129,280.9 |
| Linde | 344,388.6 |
| Matheson Tri-Gas | 17,662.6 |
| MEK Chemical Corporation | 53,694.2 |
| Meraki Group | 129,280.9 |

TABLE 6—TOTAL NUMBER OF CALENDAR YEAR 2024 CONSUMPTION ALLOWANCES AVAILABLE TO EACH ENTITY AS OF SEPTEMBER 29, 2023, ADJUSTED FOR ADMINISTRATIVE CONSEQUENCES—Continued

| Entity | Available consumption allowances, adjusted for administrative consequences (MTEVe) |
|---|---|
| Metalcraft | 104,071.1 |
| Mexichem Fluor DBA Koura | 16,478,569.0 |
| Mondy Global | 206,117.0 |
| National Refrigerants | 12,809,630.4 |
| Nature Gas Import and Export | 530,074.7 |
| North American Refrigerants | 129,280.9 |
| O23 Energy Plus | 129,280.9 |
| Perfect Score Too DBA Perfect Cycle | 24,483.4 |
| Reclamation Technologies | 257,268.6 |
| Resonac America (formerly listed as Showa Chemicals of America) | 0.0 |
| RGAS (formerly listed as Combs Gas) | 2,958,697.6 |
| RMS of Georgia | 1,065,871.4 |
| Sciarra Laboratories | 5,617.3 |
| SDS Refrigerant Services | 129,280.9 |
| Solvay Fluorides | 712,991.9 |
| Summit Refrigerants | 129,280.9 |
| SynAgile Corporation | 727.4 |
| Technical Chemical | 2,208,629.1 |
| TradeQuim | 129,280.9 |
| Transocean Offshore Deepwater Drilling | 11.0 |
| Tulstar Products | 474,770.7 |
| Tyco Fire Products | 129,280.9 |
| USA United Suppliers of America DBA USA Refrigerants | 274,023.0 |
| USSC Acquisition Corp | 84,970.4 |
| Walmart | 1,474,918.3 |
| Waysmos USA | 362,662.0 |
| Wego Chemical Group | 36,575.5 |
| Weitron | 4,099,188.7 |
| Wesco HMB | 129,280.9 |
| Wilhelmsen Ships Service | 26,123.1 |
| Total Available | 181,228,974.5 |

*Judicial Review*

The AIM Act provides that certain sections of the Clean Air Act (CAA) "shall apply to" the AIM Act and actions "promulgated by the Administrator of [EPA] pursuant to [the AIM Act] as though [the AIM Act] were expressly included in title VI of [the CAA]." 42 U.S.C. 7675(k)(1)(C). Among the applicable sections of the CAA is section 307, which includes provisions on judicial review. Section 307(b)(1) provides, in part, that petitions for review must only be filed in the United States Court of Appeals for the District of Columbia Circuit: (i) When the agency action consists of "nationally applicable regulations promulgated, or final actions taken, by the Administrator," or (ii) when such action is locally or regionally applicable, but "such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." For locally or regionally applicable final actions, the CAA

reserves to the EPA complete discretion whether to invoke the exception in (ii).

The issuance of calendar year 2024 allowances for the production and consumption of hydrofluorocarbons herein noticed is "nationally applicable" within the meaning of CAA section 307(b)(1). The AIM Act imposes a national cap on the total number of allowances available for each year for all entities nationwide. 42 U.S.C. 7675(e)(2)(B)–(D). For 2024, there was a national pool of 229,521,263 production allowances and 181,522,990 consumption allowances to distribute. The allocation action noticed herein distributed that finite set of allowances consistent with the methodology EPA established in the nationally applicable framework rule. As such, the allowance allocation is the division and assignment of a single, nationwide pool of HFC allowances to entities across the country according to the uniform, national methodology established in EPA's regulations. Each entity's allowance allocation is a relative share of that pool; thus, any

additional allowances awarded to one entity directly affects the allocations to others.

In the alternative, to the extent a court finds the final action to be locally or regionally applicable, the Administrator is exercising the complete discretion afforded to him under the CAA to make and publish a finding that the allocation action is based on a determination of "nationwide scope or effect" within the meaning of CAA section 307(b)(1).[2] In deciding to invoke this exception, the Administrator has taken into account a number of policy considerations, including his judgment regarding the benefit of obtaining the D.C. Circuit's authoritative centralized review, rather than allowing development of the issue in other contexts, in order to ensure consistency in the Agency's approach to

---

[2] In the report on the 1977 Amendments that revised section 307(b)(1) of the CAA, Congress noted that the Administrator's determination that the "nationwide scope or effect" exception applies would be appropriate for any action that has a scope or effect beyond a single judicial circuit. See H.R. Rep. No. 95–294 at 323, 324, reprinted in 1977 U.S.C.C.A.N. 1402–03.

allocation of allowances in accordance with EPA's national regulations in 40 CFR part 84. The final action treats all affected entities consistently in how the 40 CFR part 84 regulations are applied. The allowance allocation is the division and assignment of a single, nationwide pool of HFC allowances to entities across the country according to the uniform, national methodology established in EPA's regulations, and each entity's allowance allocation is a relative share of that pool; thus, any additional allowances awarded to one entity directly affect the allocations to others. The Administrator finds that this is a matter on which national uniformity is desirable to take advantage of the D.C. Circuit's administrative law expertise and facilitate the orderly development of the basic law under the AIM Act and EPA's implementing regulations. The Administrator also finds that consolidated review of the action in the D.C. Circuit will avoid piecemeal litigation in the regional circuits, further judicial economy, and eliminate the risk of inconsistent results for different regulated entities. The Administrator also finds that a nationally consistent approach to the allocation of allowances constitutes the best use of agency resources. The Administrator is publishing his finding that the allocation action is based on a determination of nationwide scope or effect in the **Federal Register** as part of this notice in addition to inclusion on the website announcing allocations.

For these reasons, the final action of the Agency allocating hydrofluorocarbon allowances to entities located throughout the country is nationally applicable or, alternatively, the Administrator is exercising the complete discretion afforded to him by the CAA and finds that the final action is based on a determination of nationwide scope or effect for purposes of CAA section 307(b)(1) and is hereby publishing that finding in the **Federal Register**.

Under section 307(b)(1) of the CAA, petitions for judicial review of this allocation action must be filed in the United States Court of Appeals for the District of Columbia Circuit by December 18, 2023. Under section 307(b)(1) of the CAA, petitions for judicial review of the administrative consequence actions noticed herein must be filed in the United States Court of Appeals for the appropriate circuit by December 18, 2023. Filing a petition for reconsideration by the Administrator of this final action does not affect the finality of this action for purposes of judicial review nor does it extend the time within which a petition for judicial

review may be filed and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. See CAA section 307(b)(2).

**Paul Gunning,**
*Director, Office of Atmospheric Protection.*
[FR Doc. 2023–22163 Filed 10–18–23; 8:45 am]
**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

**[EPA–HQ–OGC–2023–0500; FRL–11447–01–OGC]**

## Proposed Consent Decree, Clean Air Act Citizen Suit

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of proposed consent decree; request for public comment.

---

**SUMMARY:** In accordance with the Clean Air Act, as amended (CAA or the Act), notice is given of a proposed consent decree in *Center for Biological Diversity* v. *United States Environmental Protection Agency, et al.,* No. 2:23–cv–01843 (E.D. Pa.). On May 16, 2023, Plaintiff Center for Biological Diversity filed a complaint in the Unites States District Court for the Eastern District of Pennsylvania. Plaintiff alleged that the Environmental Protection Agency (EPA or the Agency) has unreasonably delayed taking action following the United States Court of Appeals for the Third Circuit's September 3, 2021, order in Case No. 21–1279. That order granted EPA's request to remand to EPA for reconsideration a final rule titled "Air Plan Approval; Pennsylvania; Reasonably Available Control Technology (RACT) for Volatile Organic Compounds (VOC) Under the 2008 Ozone National Ambient Air Quality Standards (NAAQS)," published in the **Federal Register** on December 14, 2020). The proposed consent decree would establish a deadline for EPA to complete its reconsideration of that final rule.

**DATES:** Written comments on the proposed consent decree must be received by November 20, 2023.

**ADDRESSES:** Submit your comments, identified by Docket ID No. EPA–HQ–OGC–2023–0500, online at *https:// www.regulations.gov* (EPA's preferred method). Follow the online instructions for submitting comments.

*Instructions:* All submissions received must include the Docket ID number for this action. Comments received may be posted without change to *https:// www.regulations.gov,* including any

personal information provided. For detailed instructions on sending comments and additional information on the rulemaking process, see the "Additional Information about Commenting on the Proposed Consent Decree" heading under the **SUPPLEMENTARY INFORMATION** section of this document.

**FOR FURTHER INFORMATION CONTACT:** Derek Mills, Air and Radiation Law Office, Office of General Counsel, U.S. Environmental Protection Agency; telephone (202) 564–3341; email address *mills.derek@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

## I. Obtaining a Copy of the Proposed Consent Decree

The official public docket for this action (identified by Docket ID No. EPA–HQ–OGC–2023–0500) contains a copy of the proposed consent decree. The official public docket is available for public viewing at the Office of Environmental Information (OEI) Docket in the EPA Docket Center, EPA West, Room 3334, 1301 Constitution Ave. NW, Washington, DC. The EPA Docket Center Public Reading Room is open from 8:30 a.m. to 4:30 p.m., Monday through Friday, excluding legal holidays. The telephone number for the Public Reading Room is (202) 566–1744, and the telephone number for the OEI Docket is (202) 566–1752.

The electronic version of the public docket for this action contains a copy of the proposed consent decree and is available through *https:// www.regulations.gov.* You may use *https://www.regulations.gov* to submit or view public comments, access the index listing of the contents of the official public docket, and access those documents in the public docket that are available electronically. Once in the system, key in the appropriate docket identification number then select "search."

## II. Additional Information About the Proposed Consent Decree

On December 14, 2020, EPA issued a final rule approving two revisions to Pennsylvania's state implementation plan (SIP) to address certain reasonably available control technology requirements, specifically those related to control techniques guidelines for volatile organic compounds and the addition of regulations controlling volatile organic compounds emissions from industrial cleaning solvents. That final rule was titled "Air Plan Approval; Pennsylvania; Reasonably Available Control Technology (RACT) for Volatile Organic Compounds (VOC) Under the

# EXHIBIT B

# LAWRENCE J. JOSEPH, ESQ.

1250 Connecticut, NW, Suite 700-1A – Washington, DC 20036
Tel: 202-355-9452 – Fax: 202-318-2254
www.larryjoseph.com

December 12, 2022

**VIA EMAIL AND PRIORITY MAIL**

Cynthia Newberg, Director
Stratospheric Protection Division
Office of Air & Radiation
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460
Email: Newberg.Cindy@epa.gov

Hans Christopher Grundler
Director, Office of Atmospheric Programs
Office of Air & Radiation
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460
Email: Grundler.Christopher@epa.gov

> **Re:    HFC Allocations for Peter Williams**

Dear Ms. Newberg and Mr. Grundler:

On behalf of Peter Williams, this letter follows on J. Gordon Arbuckle's letter to Ms. Newberg dated April 20, 2022, and Luke Hall-Jordan's email to Mr. Williams on April 26, 2022. Mr. Arbuckle's letter asked Ms. Newberg to reconsider the denial dated March 31, 2022 ("EPA Denial"), of Mr. Williams' application for hydrofluorocarbons ("HFC") allocations as a new entrant under 40 C.F.R. § 84.15(c)(2). Mr. Grundler signed the Federal Register notices for the 2022 new-entrant allocation, 87 Fed. Reg. 19,683 (Apr. 5, 2022), and for the 2023 and subsequent allocations, 87 Fed. Reg. 61,314 (Oct. 11, 2022). This letter advises you of Mr. Williams' understanding of the issues presented here and how EPA can and should resolve them.

## FACTUAL BACKGROUND

Under EPA's program for HFC phasedown, Mr. Williams timely applied for a new entrant allocation of 200,000 metric tons of exchange value equivalent ("MTEVe") as "Peter Williams/dba The New Era Group." His application materials clearly describe the applicant as unincorporated in South Carolina.

Based on Georgia corporate information about "New Era Group, Inc." outside of Mr. Williams' application, EPA found the applicant to "'share corporate or common ownership, corporate affiliation in the past five years, or familial relations' with an entity receiving allowances through this rule, specifically RMS of Georgia." EPA Denial, at 1. In addition, based on EPA's erroneous understanding that the applicant was "New Era Group, Inc." of Georgia,

Cynthia Newberg, Director
Stratospheric Protection Division

Hans Christopher Grundler, Director
Office of Atmospheric Programs

December 12, 2022
Page 2

EPA also found the application incomplete for omitting certain corporate information about New Era Group, Inc. "For these reasons, EPA is denying New Era Group's application." *Id.* at 2.

Mr. Arbuckle's letter explained that Mr. Williams was an individual operating under the "dba" New Era Group, not the Georgia corporation with a similar name. The letter included an affidavit from Mr. Williams, which explained his operation as "*Peter Williams (d/b/a The New Era Group*" since 2008, as well as his involvement with and dissociation from New Era Group, Inc. of Georgia.[1] Mr. Williams participated in New Era Group, Inc. of Georgia with other industry stakeholders for purposes of filing comments with EPA and litigation. The corporation was "a nonprofit organization that represents the interests ofhydrochlorofluorocarbon-22 reclaimers and producers of alternative refrigerants." New Era Group, Inc.'s Certificate of Parties, Rulings Under Review, and Related Cases Pursuant to Circuit Rule 28(a)(l), at 1, *New Era Grp., Inc. v. EPA*, 2014 U.S. App. LEXIS 19027 (D.C. Cir. Oct. 3, 2014) (No. 14-1054).

The "Who Is" search for neweragroupinc.com shows that the domain was first registered in 2009.[2] According to the Georgia Secretary of State's website,[3] the Georgia corporation "New Era Group, Inc." was incorporated on May 16, 2014, and administratively dissolved on October 22, 2020, after filing its last annual registration in 2019. (EPA located that 2019 registration, which was filed on March 29, 2019.)

In response to Mr. Arbuckle's letter, EPA staff contacted Mr. Williams to indicate that the 2022 allocation was final and could not be revised:

> We've had a chance to confer on whether there are additional administrative processes within EPA to reconsider the decision to deny your request for set-aside allowances as a new market entrant. We were not able to identify any process by which you could appeal the decision to the Agency, as the decisions were final agency action and all allowances from the set-aside have been allocated.

---

[1]      Mr. Williams does not waive his arguments about that dissociation, but for the reasons set out in Section I.C, *infra*, EPA can find that Mr. Williams does not share "corporate affiliation" with RMS of Georgia without considering those arguments about dissociation.

[2]      https://www.godaddy.com/whois (last visited Dec. 12, 2022).

[3]      https://ecorp.sos.ga.gov/BusinessSearch (last visited Dec. 12, 2022).

Cynthia Newberg, Director
Stratospheric Protection Division

Hans Christopher Grundler, Director
Office of Atmospheric Programs

December 12, 2022
Page 3

Email from Luke Hall-Jordan, Environmental Protection Agency, to Peter Williams (April 26, 2022).

EPA allocated Altair Partners significant HFC allocations, both for 2022 and for 2023 and subsequent years. *See* 86 Fed. Reg. 55,841, 55,843 (Oct. 7, 2021) (allocating Altair 2,908,497.9 MTEVe for 2022); 87 Fed. Reg. at 19,686 (allocating Altair an additional 5,390.0 MTEVe for 2022); 87 Fed. Reg. at 61,316 (allocating Altair 2,918,730.4 MTEVe for 2023 and subsequent years). For 2022 and 2023, however, EPA retired 2,441,028.6 MTEVe and 2,449,616.4 MTEVe, respectively, as an administrative consequence of Altair's "[m]isreport[ing] data used for purposes of allocating allowances."[4]

## DISCUSSION

To proceed in this matter, EPA needs to determine whether the Agency erred in denying Mr. Williams' application and, if so, whether the Agency may correct that error prospectively for the HFC allocations for 2023 and subsequent years and retrospectively for the HFC allocations for 2022. The following two sections address those two questions.

## I.     EPA's denial of Mr. Williams' application was erroneous.

In denying Mr. Williams' application, EPA apparently noticed that Mr. Williams' "dba" or trade name—New Era Group—was similar to the name of a Georgia corporation, New Era Group, Inc., with which Mr. Williams had been involved. Based on connections between an existing HFC importer—RMS of Georgia—EPA concluded that "New Era Group" (*i.e.*, Mr. Williams) was ineligible for HFC allocations as a new market entrant. EPA's conclusion was erroneous on several levels. *First*, the trade name "New Era Group" was not the corporation New Era Group, Inc. of Georgia. *Second*, an induvial like Mr. Williams cannot do business as a corporation. *Third*, and in any event, Mr. Williams past involvement with New Era Group, Inc. of Georgia does not tie him to RMS of Georgia under 40 C.F.R. § 84.15(c)(2).

### A.     EPA erroneously conflated Mr. Williams' trade name with a separate corporation.

Since 2008, Mr. Williams has done business as "New Era Group" in South Carolina. Notwithstanding the similarity of the two names, Mr. Williams' application clearly indicates that

---

[4]     *See* Administrative Consequences Under the HFC Allocation Rule (Dec. 8, 2022), https://www.epa.gov/climate-hfcs-reduction/administrative-consequences-under-hfc-allocation-rule (last visited Dec. 12, 2022).

Cynthia Newberg, Director
Stratospheric Protection Division

Hans Christopher Grundler, Director
Office of Atmospheric Programs

December 12, 2022
Page 4

the applicant is unincorporated. The HFC regulations clearly recognize that individuals are not corporations. 40 C.F.R. § 84.3 (defining "person" to include not only individuals but also corporations). EPA thus erred in assuming that Mr. Williams was applying as New Era Group, Inc. of Georgia.

**B.      EPA erroneously conflated Mr. Williams with a corporation.**

Even without EPA's mistaken belief that Mr. Williams' "dba" or trade name referred to the Georgia corporation named "New Era Group, Inc.," EPA's conflation of Mr. Williams with a corporation erred on a more basic level. With exceptions not relevant here,[5] an individual cannot "do business as" a corporation.

Indeed, even if Mr. Williams owned New Era Group, Inc. of Georgia—which he never did—his use of "New Era Group" as a "dba" or trade name would not equate the corporation with the trade name: "An individual doing business under a trade name is clearly a sole proprietor distinct under Georgia law from a corporation in which that individual holds stock." *Miller v. Harco Nat'l Ins. Co.*, 274 Ga. 387, 390, 552 S.E.2d 848 (2001); *see also BellSouth Corp. v. FCC*, 162 F.3d 678, 684 (D.C. Cir. 1998) ("it is obvious that there are differences between a corporation and an individual under the law"). Moreover, "[c]orporations are creatures of state law," *Cort v. Ash*, 422 U.S. 66, 84 (1975); *Business Roundtable v. SEC*, 905 F.2d 406, 412 (D.C. Cir. 1990); *Doe v. McMaster*, 355 S.C. 306, 313, 585 S.E.2d 773, 777 (2003); *Tr. Co. of Ga. v. State*, 109 Ga. 736, 755, 35 S.E. 323, 329-30 (1900), and no relevant provision of law equates individuals with corporations.

Both before and after the existence of New Era Group, Inc. of Georgia, Mr. Williams did business under the trade name "New Era Group." That cannot make Mr. Williams a corporation, and it does not make him "New Era Group, Inc." of Georgia.

**C.      EPA erroneously applied § 84.15(c)(2) to Mr. Williams.**

In pertinent part, § 84.15(c)(2) limits new-entrant allocations to "[p]ersons who … do not

---

[5]      The exception proves the rule. It is possible for an individual to be a corporation *de facto* even if the individual is not a corporation *de jure*, *Tulare Irrigation Dist. v. Shepard*, 185 U.S. 1, 13-14 (1902), but that requires specific findings (*e.g.*, an attempt to incorporate under an applicable state corporation law and actual use of the corporate franchise), *id.*, none of which were met here. All that Mr. Williams did here was use an email address that included "inc" in it, based on his plans to incorporate some day in the future. That does not make Mr. Williams a corporation *de facto*.

Cynthia Newberg, Director
Stratospheric Protection Division

Hans Christopher Grundler, Director
Office of Atmospheric Programs

December 12, 2022

Page 5

share corporate or common ownership, corporate affiliation in the past five years, or familial
relations with entities receiving allowances through this rule." 40 C.F.R. § 84.15(c)(2). EPA
cited this provision to deny Mr. Williams' application, based on the perceived relationship
between New Era Group, Inc. of Georgia and RMS of Georgia. Given EPA's conflation of Mr.
Williams and New Era Group, Inc. of Georgia, EPA also found the application incomplete in that
it did not provide certain information related to New Era Group, Inc. of Georgia.

> **1.**     **<u>Mr. Williams did not share "corporate or common ownership" with
> RMS of Georgia.</u>**

The first potentially pertinent clause of § 84.15(c)(2) withholds new-entrant status for
sharing "corporate or common ownership" with an entity already receiving HFC allocations.
There is no suggestion in the Georgia corporate materials that EPA located to suggest that either
Mr. Williams or his trade name—New Era Group of South Carolina—owns any part either of
New Era Group, Inc. of Georgia or of RMS of Georgia.

> **2.**     **<u>Mr. Williams did not share "corporate affiliation" with RMS of
> Georgia.</u>**

The second potentially pertinent clause of § 84.15(c)(2) withholds new-entrant status for
sharing "corporate affiliation" with an entity already receiving HFC allocations. Given the clear
inapplicability of the first and third clauses, this presumably is what EPA found to apply.

As Mr. Williams has explained by affidavit, he timely dissociated himself from New Era
Group, Inc. of Georgia, but even without that, the second clause would not apply because New Era
Group, Inc. of Georgia was not itself an "entit[y] receiving allowances through this rule." 40
C.F.R. § 84.15(c)(2). Having a consultant like Mr. Williams and principals from industry
stakeholders like RMS of Georgia participate in the same nonprofit does not make the
consultants or the nonprofit itself an "entit[y] receiving allowances through this rule" for
purposes of § 84.15(c)(2). It may well be that the relationship between New Era Group, Inc. of
Georgia and RMS of Georgia would preclude New Era Group, Inc. of Georgia from receiving a
new-entrant allocation, but that is irrelevant to whether Mr. Williams or his trade name—New
Era Group of South Carolina—shared a "corporate affiliation" with RMS of Georgia.

In mathematical terms, § 84.15(c)(2)'s "corporate affiliation" prong is not transitive. The
twin facts that (a) Mr. Williams may have had a "corporate affiliation" with New Era Group,
Inc., and (b) New Era Group, Inc., may have had a "corporate affiliation" with RMS of Georgia,
does not mean that Mr. Williams has a "corporate affiliation" with RMS of Georgia. To the
contrary, the "corporate affiliation" must be with the "entit[y] receiving allowances through this
rule." 40 C.F.R. § 84.15(c)(2). New Era Group, Inc. cannot bridge the gap between Mr. Williams

Cynthia Newberg, Director
Stratospheric Protection Division

Hans Christopher Grundler, Director
Office of Atmospheric Programs

December 12, 2022

Page 6

and RMS of Georgia because New Era Group, Inc. itself is not an "entit[y] receiving allowances through this rule." 40 C.F.R. § 84.15(c)(2).

### 3.  Mr. Williams did not share "familial relations" with RMS of Georgia.

The third and last potentially pertinent clause of § 84.15(c)(2) withholds new-entrant status for sharing "familial relations" with an entity already receiving HFC allocations. There is no suggestion in the non-record materials that EPA located to suggest a familial relationship with RMS of Georgia.

### 4.  EPA's incompleteness finding on Mr. Williams' application was derivative of EPA's erroneous corporate analysis.

If Mr. Williams' trade name—New Era Group of South Carolina—is not the same person as New Era Group, Inc. of Georgia, then not including information about relationships between that third-party and RMS of Georgia does not make Mr. Williams' application incomplete. Quite simply, New Era Group, Inc. of Georgia and RMS of Georgia have nothing to do with Mr. Williams' application.

## II.  EPA staff erroneously concluded that nothing can be done.

If EPA erred in conflating (a) Mr. Williams and his trade name with (b) New Era Group, Inc. of Georgia and RMS of Georgia, EPA still could correct its error, both with respect to the initial 2022 allocation and with respect to the more recent allocation for 2023 and subsequent years. This is basic administrative law: "An initial agency interpretation is not instantly carved in stone." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 863-64 (1984). Indeed, if the Clean Air Act did not allow reconsideration, that would raise questions of whether the HFC allocation program is even constitutional.

### A.  The Clean Air Act, administrative law, and Constitution provide a path to remedy EPA's errors on Mr. Williams' application.

Section 307(b)(1) of the Clean Air Act expressly contemplates administrative petitions for reconsideration. *See* 42 U.S.C. § 7607(b)(1).[6] It is doubtful that the First Amendment would allow a statute that barred the affected public from petitioning an agency to correct an error.

---

[6]      To be sure, § 307(b)(1) also limits the effect of a petition for reconsideration on actions' finality for judicial review and on the date when actions take effect. *See id.*

Cynthia Newberg, Director
Stratospheric Protection Division

Hans Christopher Grundler, Director
Office of Atmospheric Programs

December 12, 2022
Page 7

The Supreme Court recently recognized administrative petitions for reconsideration as the administrative-law norm:

> Congress has carried the model of principal officer review into the modern administrative state. As the Government forthrightly acknowledged at oral argument, it certainly is the norm for principal officers to have the capacity to review decisions made by inferior adjudicative officers. The Administrative Procedure Act, from its inception, authorized agency heads to review such decisions. And "higher-level agency reconsideration" by the agency head is the standard way to maintain political accountability and effective oversight for adjudication that takes place outside the confines of §557(b). To take one example recently discussed by this Court in Free Enterprise Fund, the Public Company Accounting Oversight Board can issue sanctions in disciplinary proceedings, but such sanctions are reviewable by its superior, the Securities and Exchange Commission.

*United States v. Arthrex, Inc.*, 141 S.Ct. 1970, 1983-84 (2021) (interior quotation marks and citations omitted). In short, whatever the implications for judicial review of EPA's deciding not to correct its error, the Clean Air Act not only allows Mr. Williams to petition EPA to correct its error, but also allows EPA to grant that petition.

### B.      EPA's distribution of 2022 HFC allocations in April of 2022 does not preclude EPA's remedying its errors on Mr. Williams' application now.

If EPA acknowledges its mistake in denying Mr. Williams' application and the existence of an administrative avenue to remedy that mistake, Mr. Hall-Jordan's remaining concern (*i.e.*, that "all allowances from the set-aside have been allocated") poses no obstacle now, even if it posed an obstacle on April 26, 2022. The administrative consequences assessed against Altair Partners provide ample allowances for 2022 and 2023 to make Mr. Williams whole.

### C.      If EPA and its Administrator cannot remedy EPA's errors on Mr. Williams' application, the entire HFC program violates the Appointments Clause.

As indicated, § 307(b)(1)'s plain language about reconsideration, the Supreme Court's recognition of that norm in *Arthrex*, and the First Amendment's petition clause all support Mr. Williams' ability to petition EPA for reconsideration of its erroneous denial of his application. If, notwithstanding those sources, your staff are correct that Mr. Williams cannot petition EPA to reconsider the final agency actions of Ms. Newberg's denying Mr. Williams' application and Mr.

Cynthia Newberg, Director
Stratospheric Protection Division

Hans Christopher Grundler, Director
Office of Atmospheric Programs

December 12, 2022
Page 8

Grundler's promulgating the allocation notices, the HFC allocation process would violate the
Constitution's Appointments Clause. U.S. CONST. art. II, § 2, cl. 2.

Under that Clause, principal officers must be appointed by the President with the advice
and consent of the Senate, while inferior officers may be appointed by the President alone, the
head of an executive department, or a court. *Id.* To the extent that you exercise significant
governmental authority, *Buckley v. Valeo*, 424 U.S. 1, 126 & n.162 (1976), you qualify as at least
inferior officers. *See Edmond v. United States*, 520 U.S. 651, 660-62 (1997). Under *Arthrex*,
however, "[o]nly an officer properly appointed to a principal office may issue a final decision
binding the Executive Branch" in such proceedings. *Arthrex*, 141 S.Ct. at 1985. The Clause is
simply another reason you should accept Mr. Williams' argument in Section II.A, *supra*, that
EPA can correct its error here, notwithstanding Mr. Hall-Jordan's analysis.

### D.    EPA should remedy its HFC actions' disparate race-based impacts.

Finally, as the record reflects and I believe you know, Mr. Williams is a person of color
and—on information and belief—the only person of color who applied for HFC allocations.
EPA's implementing regulations prohibit disparate impacts based on race. 40 C.F.R. § 7.35(b).
While disparate impacts alone may not be actionable, *see, e.g.*, *Alexander v. Sandoval*, 532 U.S.
275, 288-89 (2001), an agency's failure to follow its own regulations is actionable. *United States
v. Macdaniel*, 32 U.S. (7 Pet.) 1, 15 (1833); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). As
relevant here, Mr. Williams is also—on information and belief—the only person whose
application EPA erroneously denied.

As galling as that is by itself, it is all the worse when EPA's treatment of Altair Partners
is factored into the equation:

- Mr. Williams—who did nothing wrong—is punished permanently for EPA's mistake.

- Altair—whose misreporting appears to have garnered an initial 2022 allocation of
  2,908,497.9 MTEVe—was docked 83% as an administrative consequence for 2022 and
  2023, but otherwise credited thereafter with its inflated allocation. *Compare* 86 Fed. Reg.
  at 55,843 (2022) *with* 87 Fed. Reg. at 61,316 (2023 and subsequent years).

In other words, the person of color pays for all years for EPA's mistake, while a limited
partnership benefits prospectively—after two one-year penalties—for its own misreporting.

In equal-protection contexts, "the appropriate remedy is a mandate of *equal* treatment,
[which] can be accomplished by withdrawal of benefits from the favored class as well as by
extension of benefits to the excluded class." *Heckler v. Mathews*, 465 U.S. 728, 740 (1984)

Cynthia Newberg, Director
Stratospheric Protection Division

Hans Christopher Grundler, Director
Office of Atmospheric Programs

December 12, 2022
Page 9

(emphasis in original). Either Mr. Williams should be allowed to cure EPA's mistake—at least prospectively for 2023 and subsequent years—or Altair should not be allowed to avoid its mistake with mere one-year penalties. EPA must either level Mr. Williams up or level Altair down.

## <u>REQUESTED RELIEF</u>

Mr. Williams respectfully submits that the Agency has not only the power to correct the injustice done here, but also the obligation to do so. Specifically, EPA should provide Mr. Williams the 2022 allocation that EPA wrongly denied from the materials that EPA reclaimed under administrative consequences and should extend that allocation for 2023 and subsequent years.

Mr. Williams intends to pursue any available legal options if this issue cannot be resolved administratively, including petitioning for review of the HFC allocation for 2023 and subsequent years, 87 Fed. Reg. 61,314 (Oct. 11, 2022). Please include this letter in the administrative record of that action, for which EPA did not seek comment.

## <u>CONCLUSION</u>

Please advise me whom among the two of you, your respective staffs, or counsel I should follow up to discuss these issues.

Yours sincerely,

/s/ Lawrence J. Joseph

Lawrence J. Joseph

cc:     Jeffrey M. Prieto, Esq. EPA General Counsel (via email, w/Encl.)

**J. Gordon Arbuckle, Esq.**
2550 M Street NW
Washington, DC 20037
T  + 1 202 775 2025
M  + 1 303 619 5123
gordona123@earthlink.net

April 20, 2022

Cynthia A. Newburg
Director, Stratospheric Protection Division
United States Environmental Protection Agency
Office of Air and Radiation
Washington, DC 20460

*Via Email:* HFCAllocation@EPA.gov

Dear Ms. Newberg:

I am writing on behalf of Peter Williams (dba The New Era Group) in response to your letter dated March 31, 2022.  The representation is being provided without fee because I believe a substantial injustice has occurred due to the Agency's failure to give Mr. Williams proper notice of the purported basis for its eligibility determination and a resultant major misunderstanding by the agency of the relevant facts of this matter.  Let me begin by requesting from you a complete copy of the administrative record on this matter, including a copy of the "information before the Agency" which was relied upon in reaching the conclusion that this applicant does (or did) "share corporate or common ownership, corporate affiliation in the past five years or familial relations" with RMS of Georgia – a company receiving allowances under the rule as well as any legal opinion supporting the legal conclusion that an individual is a "company" which must state its ownership in the required application.

**FACTS**

Peter Williams, as an individual, commenced business as "The New ERA Group" sometime in 2008.  He has continued to do business in that capacity up to the present date .[1]   Sometime in 2014, Mr. Williams participated in the formation of an informal membership organization operating under the style "New Era Group" which was formed for the purpose of prosecuting a judicial appeal of an EPA ruling which the group believed to be erroneous.  The group operated by consensus and was not controlled by any member or member company.  Mr. Williams and his employees acted as coordinator and assisted in administration of the organization.

In May of 2014, *New Era Group Inc* was established for the purpose of providing a corporate identity for the *New Era Group* membership organization and establishing its nonprofit status.[2]  Mr. Ken Ponder and

---

[1] Some of the confusion in this matter may stem from the fact that at the time Mr. Williams commenced business in 2008, he intended to establish and operate as a corporation. Accordingly, he had cards and letterhead printed and established an e-mail address including "inc" as part of the address.  Unfortunately, Mr. Williams has never had sufficient resources to fund his corporate intentions or establish any other form of business entity. Accordingly, he has operated in fact as an individual—a fact clearly disclosed in his application.  I have advised Mr. Williams to remove the word "inc" from all such papers and communications and he is doing so.

[2] The Articles provide that "The purpose of NEW ERA GROUP INC is to assist with the education and environmental defense of any harmful and/or negative environmental impacts.  These educational and defense efforts include, but are not limited to exposing governmental agencies,  public service companies and chemical producing businesses that may have products, by-products or policies that may negatively impact pour quality of life."

his family were the sole shareholders and sole officers with control or managerial authority. Mr. Williams was designated as "Fundraising Chair" to authorize him to continue his administrative support functions for the ongoing litigation. Those services ended sometime in early 2015. "Fundraising Chair" is not a legally defined corporate office and nothing in the Articles or Bylaws grants to Mr. Williams any power or managerial authority. Mr. Williams administrative functions were completed in early 2015, with conclusion of the litigation and a decision not to appeal.

Since that time, Mr. Williams has had no official function with *New Era Group*, *Inc*. He has exercised no control or management authority and he received no notice of nor access to any of that corporation's official filings, records or business dealings. He received no notice of, nor has he participated in, any corporate meetings.

In March of 2016, Mr. Williams, having heard nothing from *New Era Group Inc.* for nearly two years, submitted to the owners and their accountant repeated demands for the company's corporate records. On receipt of some of those records, he concluded that, without his knowledge, the company was apparently being operated as a for profit entity and that, without his consent, he had been designated CEO of the Company. He immediately gave notice to both the owners and the Internal Revenue Service of his denial of involvement with either the *New Era Group Inc.* or its owners after May of 2014 and has had no dealings with *New Era Group Inc.,* other than the referenced notice, since that time.[3]

**ANALYSIS AND CONCLUSIONS**

Based on the facts set out above, which are supported by the attached sworn affidavit and supporting materials, though due to limited resources and failure to fully appreciate the details of certain legal obligations, Mr. Williams has not always precisely understood his legal status, has allowed himself to be exploited by others and has allowed EPA to misconstrue his legal status, ***it is clear that:***

1. Peter Williams (dba The New Era Group) and *The New Era Group, Inc.,* are separate persons as defined in the Section 84.3 – *"any individual or legal entity including an individual, corporation…."*

*2.* Peter Williams does not "*share corporate or common ownership" in New Era Group, Inc*., any owner of that company, any company affiliated with that company, any member of the  Ponder family, any company owned in whole or in part by any member of the Ponder family, *RMS of Georgia* or any entity affiliated with that company.

3. Peter Williams has never "shared corporate affiliation" with *RMS of Georgia.* First, as the above cited definition makes clear, an individual is not a corporation and thus any affiliation an individual may have, cannot be corporate.[4] Second, although part  84 does not define "affiliate", the term in governmental contexts clearly means "controlling, controlled by or under common control with". Peter Williams has never exerted any degree of control over *New Era Group Inc., RMS of Georgia* or any of the persons or entities itemized in Conclusion 2 above.

4. Neither the *New Era Group Inc.,[5]* nor any person nor entity with which Peter Williams has been affiliated in the last five years, or most probably ever, has, to Mr. Williams' knowledge or within Mr. Williams' knowledge and control or during the time when Mr. Williams held a non-managerial title, received allowances under the final HFC allocation rule. Any such allocations which may have been received were illegally granted and illegally received.

---

[3] Mr. Williams, as an individual, did do some independent consulting work for certain of the RMS group of companies but never held an equity interest of exerted any control over any of them.

[4] The language appears to refer to interlocking or affiliated corporations. Otherwise it would simply refer to "affiliation".

[5] As noted above, *New Era Group, Inc.* was never legally authorized to receive or sell allowances.

5. As the "person" definition makes clear, an individual is not an entity, a corporation or a company. The parts of section 84.15 referenced in your letter are simply inapplicable to individuals and the conclusion based on those sections is in error.

6. Peter Williams has been denied administrative due process in this matter in that the decision was based on evidence outside the record which was not disclosed to Applicant. Nor was Applicant given an opportunity to respond to or rebut this evidence or the erroneous conclusions based thereon.

**REQUEST FOR RELIEF**

While I am aware that Peter Williams has been a vocal critic of certain agency actions and is perhaps not the most popular person within the Agency, and that the application he submitted may not be the most artful the Agency has seen. I am also aware that HFC Allocations are jealously guarded, and that past HFC recipients do not favor new applicants. Finally, I am painfully aware that a person of color has never received an HFC allocation, that this person of color has been taken advantage of by a member of the HFC community and that that factor has substantially affected your decision in this matter.

I ask that you review your decision and revise it consistent with the facts stated herein.

Please advise me of Mr. Williams' Rights of Appeal in the event an appeal is necessary.

Thank you for your attention,

J Gordon Arbuckle, Esq.

## AFFIDAVIT OF PETER WILLIAMS

I am Peter Williams.  I reside at 709 Pickering Drive, Unit B, Murrells Inlet, South Carolina, 29567.

The following statements are true to the best of my knowledge and belief:

1. I have been engaged in business and advisory services related to the production and sale of chlorinated CFCs, HCFCs and HFCs since _/993_.

2. I then commenced business as "the New Era Group" sometime in 2008.

3. At the time I commenced operating as *the New Era Group*, I intended to establish a corporation and operate through that Corporation.  Accordingly, I established an email address and had cards and letterhead printed including the abbreviation "inc".  Unfortunately, I have never had available funds to establish a corporation but have erroneously continued to use that email address and those materials.

4. I have operated as *"Peter Williams (d/b/a The New Era Group)*.

5. Sometime in 2014, I participated with a number of other companies in the industry in the formation of an informal membership organization operating under the style "New Era Group" for the purpose of prosecuting a judicial appeal of an EPA Ruling which we believe to be erroneous.

6. The group operated by consensus and was not controlled by any member or member company.  I am an employee acted as coordinators and assisted in administration.

7. In May of 2014, Mr. Ken Ponder established the *New Era Group, Inc.* for the purpose of providing a corporate identity for the *New Era Group, Inc.* membership organization and establishing its non-profit status.

8. Mr. Ken Ponder and his families were the sole shareholders and offices with control for managerial authority.  I was designated as "fund raising chair" in order that I might continue to perform administrative support functions for the ongoing litigation.

9. My litigation support services ended sometime in early 2015.  Since that time, I have performed no official functions or services for the *New Era Group, Inc.* I have never exercised any control or management authority in that Company and since May of 2014 have received no notice of nor access to the Corporation's official filings, records or business dealings.  I have never received notice of any meeting other than the May organization meeting have never participated in any other Corporate meetings.

10. In March of 2016, having heard nothing from *New Era Group, Inc.* for nearly two (2) years, I repeated demanded from their owners and their accountants, copies of relevant corporate records.  Based on the records I did receive, pursuant to those demands, I

concluded that without my knowledge the Company was apparently being operated as a "for profit" entity, without my knowledge and consent, I have been designed in Corporate filings as "CEO" of the Company.

11. I immediately gave notice to both the owners and the Internal Revenue Service that I denied involvement with the *New Era Group, Inc.* or matters within its scope of authority after May of 2014.

12. I have had no dealings with the *New Era Group, Inc.* other than the above referenced demands and notice since that time.

13. I acknowledge that I did do some independent consulting work for certain of the RMS group of companies but never held an equity interest of exerted any control over any of them.

14. I have attached to this Affidavit copies of selected documents that support the statements made herein.

I, Peter Williams, affirm the above statements are true to the best of my knowledge.

Subscribed and sworn before me this 20th day of April, 2022.

STATE OF South Carolina )
                          ) ss.
COUNTY OF Horry          )

Subscribed, sworn to and acknowledged before me by

_____ , the agent, on April 20 , 20 2 2

Witness my hand and official seal.

My commission expires Exp. 02-04-2024

[SEAL]                          _____
                                 Notary Public
                                 4/20/2022

J DILLON SANDERS
Notary Public
State of South Carolina
My Commission Expires Feb 4, 2024

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to F<small>ED</small>. R. A<small>PP</small>. P. 26.1 and Circuit Rule 26.1, petitioner Peter

Williams is a natural person, for whom no corporate disclosure is required.

Dated: December 18, 2023          Respectfully submitted,

/s/ Lawrence J. Joseph
_____

Lawrence J. Joseph

Law Office of Lawrence J. Joseph
1250 Connecticut Ave., NW, Ste. 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Petitioner*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 18th day of December 2023, I have caused one true and correct copy of the foregoing Petition for Review—together with exhibits and a corporate disclosure—to be served on the following by postage pre-paid U.S. Priority Mail:

Hon. Michael S. Regan
Administrator
Environmental Protection Agency
Ariel Rios Building (Mail Code 1101A)
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Jeffrey M. Prieto, Esq.
General Counsel
Environmental Protection Agency
Ariel Rios Building (Mail Code: 2310A)
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

/s/ Lawrence J. Joseph
Lawrence J. Joseph